IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


LARRY V. SHIRLEY,                       :
                                        :
        Plaintiff,                      :
                                        :
v.                                      :               CIVIL ACTION 03-0450-M
                                        :
KIMBERLY-CLARK CORPORATION              :
PENSION PLAN and KIMBERLY-              :
CLARK CORPORATION MEDICAL               :
PLAN,                                   :
                                        :
        Defendant.                      :


<u>MEMORANDUM OPINION AND ORDER</u>


This action comes before the Court on the Motions for

Summary Judgment filed by the Defendants (Docs. 43, 44, 45,

48) and by Plaintiff (Docs. 46, 47, 49, 50, 51, 52).[1]

---

[1]The Court notes, as a preliminary matter, that Plaintiff claims
that Defendants have failed to follow Local Rule 7.1(b) in filing two
documents in response to his motion for summary judgment, which led
to Defendants' presenting more than thirty pages in arguments (Doc.
58, p. 1).  Plaintiff's complaint is **NOTED**, but to the extent he
requests the Court to do anything, it is **DENIED**.  Both parties have
had ample opportunity to make their arguments to the Court.
        However, the Court states, for the record, that Defendants'
Response to Plaintiff's Suggested Determinations of Undisputed Facts
(Doc. 55) does not come with the authority of the local rules.
Defendants should not file such a document in the future.
        Additionally, the Court notes that the briefs, from both the
Plaintiff and the Defendants, supporting the motions for summary
judgment were unduly burdensome for the Court.  Defendants referenced
all of its factual assertions to a separate document, Defendant's
Determinations of Undisputed Facts and Conclusions of Law, which
required cross-checking both documents to find the evidentiary cite
(Docs. 44-45).  Plaintiff, on the other hand, cited no evidentiary
material at all in the brief (Doc. 47) which required the Court to,
again, cross-reference supporting documents to find evidentiary

Plaintiff has invoked jurisdiction in this Court under 28 U.S.C. § 1331, asserting that this action is governed by the laws of the Employee Retirement Income Security Act of 1974 (hereinafter *ERISA*).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636©) and Fed.R.Civ.P. 73 (*see* Doc. 37).  After consideration, Defendants' motion is **GRANTED** in part and **DENIED** in part; Plaintiff's motion is **DENIED** in its entirety.

The facts, very briefly, are as follows.  Plaintiff Larry F. Shirley was formerly employed by Kimberly-Clark Corporation in Mobile and participated in the pension plan offered by that company (Doc. 24, ¶ 1; Doc. 25, ¶¶ 1, 6).  Shirley received medical attention, beginning in October 2000, and provided evidence of his medical impairments in an effort to receive total and permanent disability benefits from Defendant Kimberly-Clark Corporation Pension Plan (hereinafter *KC Pension*); those benefits were denied (Doc. 24, ¶¶ 2, 7, 9; Doc. 25, ¶¶ 2, 7, 9).  Plaintiff continued to make COBRA

support for the assertions made (Doc. 46, Exhibit A).  While the Parties have technically met the requirements of Local Rule 7.2(a), the Parties would be better served, in the future, to include all such cites in the brief.

benefit payments following his termination, but missed a
November 2002 payment (Doc. 24, ¶¶ 9-11; Doc. 25, ¶¶ 9-11).
In January 2003, Defendant Kimberly-Clark Corporation Medical
Plan (hereinafter *KC Medical*) canceled Shirley's COBRA
coverage, asserting that the November and December payments
came too late (Doc. 24, ¶¶ 3, 11; Doc. 25, ¶¶ 3, 11).

Plaintiff filed this action on July 14, 2003 (Doc. 1).
Shirley claims that he was improperly denied total and
permanent disability benefits by KC Pension and that KC
Medical improperly terminated his COBRA coverage (Doc. 24, ¶¶
12-13).  Defendants subsequently filed a Motion for Summary
Judgment (Docs. 43, 44, 45, 48); Plaintiff has responded to
that Motion (Docs. 56) to which Defendants have replied (Doc.
57).  Plaintiff has also filed a Motion for Summary Judgment
(Docs. 46, 47, 49, 50, 51, 52) to which Defendants have
responded (Docs. 54, 55); Plaintiff has replied to the
response (Doc. 58).

The Rules of Civil Procedure, in discussing summary
judgment, state that

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse
> party's pleading, but the adverse party's
> response, by affidavits or as otherwise
> provided in this rule, must set forth
> specific facts showing that there is a

> genuine issue for trial.  If the adverse
> party does not so respond, summary
> judgment, if appropriate, shall be entered
> against the adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 325-27 (1986).  The Court further bears in mind, with regard to the motions for summary judgment, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Id.*

The parties agree that the first thing to be decided is the standard of review to be undertaken by this Court.[2]  It is noted that "ERISA does not provide a standard to review decisions of a plan administrator or fiduciary.  The Supreme Court has held that a range of standards may apply to benefits

---

[2]The Court notes that briefs filed previously by the parties, arguing their respective positions on these issues, have been reviewed by the Court again in connection with these Motions for Summary Judgment (Docs. 31-32).

determinations under the statute." *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir. 1997) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)).  Those three standards are *de novo*, arbitrary and capricious, and heightened arbitrary and capricious review.  *Buckley*, 115 F.3d at 936.

To reach that determination, though, the Court needs to first consider Shirley's assertion that his claims were "deemed denied" at each step of the benefits process because KC Pension did not act on his application in a timely manner under ERISA regulations (Doc. 47, pp. 12-15).  Defendants assert, however, that they were in substantial compliance with the regulations and that no "deemed denial" took place (Doc. 54, pp. 6-11).  This argument is significant because a "deemed denial" would mean that this Court should review KC Pension's actions *de novo*.  *See Torres v. Pittston Co.*, 346 F.3d 1324, 1332-1334 (11th Cir. 2003).

The evidence demonstrates that Shirley submitted his total and permanent disability application on September 29, 2001 (*see* Doc. 47, p. 12; *see also* Doc. 54, p. 8).  Under the law, KC Pension had a period of ninety days to respond to the application.  29 C.F.R. § 2560.503-1(e)(2) (2001); *Torres*, 346 F.3d at 1332.  Ninety days added to September 29, 2001 results

in a date of December 28, 2001.

Defendants have shown, however, that Plaintiff did not sign a release for some of the submitted evidence until October 15 and that it was not received until October 23, 2001; this was twenty-five days after the application submission (Doc. 42, Exhibit 6, KCC00507-542).  When twenty-five days are added to the notification date of December 28, 2001, the new deadline becomes January 22, 2002.  Plaintiff admits that he received the denial letter on January 18, 2002 (Doc. 47, p. 12).  The Court finds that the denial letter was timely.

Shirley appealed the denial, but neither party knows the precise date; there is no apparent dispute, however, that it was timely filed which would have been by, at latest, March 19, 2002[3] since there was a requirement that the appeal be filed within sixty days (Doc. 47, p. 13; Doc. 54, p. 9).  In any event, Defendant has produced evidence that Plaintiff signed a medical authorization on May 1, 2002 and that the evidence was not received until the next day (Doc. 42, Exhibit 5, KCC004520497); the receipt of this evidence was forty-four days after the appeal was filed.  Shirley admits that KC

---

[3]Plaintiff asserted that the date was March 18, but February had only twenty-eight days that year.

Pension had sixty days to act on his appeal (Doc. 47, p. 12).
When sixty days are added to May 2, 2002, the resulting date
is July 2, 2002.  Plaintiff admits that the denial of his
appeal was dated June 24, 2002 (Doc. 47, p. 13).  Again, the
Court finds that the appeal denial was timely.

"Shirley requested a review again by the Retirement
Committee and it conducted a special review" (Doc. 47, p.
13).[4]  Plaintiff admits that he does not know the date of the
request but that it had to have been no later than November
15, 2002, a week before the Committee met (*id.*).  Shirley
assumes a sixty-day action period and asserts that he should
have been notified of the Committee's decision no later than
January 14, 2003; the rejection letter, however, was dated
January 20, 2003 (*see* Doc. 47, p. 13).  Plaintiff argues that
this was six days late.

The Court notes that Shirley admits that this second
appellate review was "special" (Doc. 47, p. 13).  Apparently
there were no procedures for such; certainly none have been
brought to the Court's attention.  Therefore, the Court finds
that the sixty-day rule was not particularly applicable,

---

[4]The Court notes that Plaintiff has stated that the Pension Plan
refers to a Retirement Board but that the decisions affecting him
were made by a Retirement *Committee* (Doc. 47, p. 3-4).  Though
Shirley asserts that something is amiss in this name change, he has
shown nothing to indicate that such is the case.

especially in light of the fact that Shirley was receiving non-required review of his claim.  Under these facts, the Court finds that KC Pension substantially complied with the spirit of the "sixty-day-first-appeal-rule" and no "deemed denial" took place.

The Court is aware that Plaintiff, in his arguments, calculated the time that the Committee had to act from the date of his application and appeal and did not take into account the dates of the later-submitted evidence to be considered (which the Court has done).  Using Shirley's calculations would mean that the initial application was twenty-one days late,[5] the appeal was thirty-seven days late,[6] and the special appeal was six days late.  However, the Court finds that Plaintiff's delay of twenty-five days (for his application) and forty-four days (for his appeal) to get needed medical evidence to the Committee has to be considered.  After having considered it, the Court finds that such delays on the part of the Plaintiff excuse the delays made by Defendant.

Additionally, the Court notes that Plaintiff did not take

---

[5]This is based on a calculation of days from December 28, 2001 through January 18, 2002.

[6]This is based on a calculation of days from May 18, 2002 through June 24, 2002.

8

any sort of action at the times he claims his application and appeals were "deemed denied." This action was not even filed until more than six months after the "special review" was completed. To that end, Plaintiff has not shown any prejudice in the delays he has alleged that he suffered.

As the Court finds that Defendants have substantially complied with the ERISA regulations and there is evidence of the Committee's decisions at each stage of the process, the Court finds no circumstances which necessitate a finding of "deemed denial." Therefore, the Court will not conduct a *de novo* review of the decisions reached in this disability process.

The next consideration in determining the standard of review is whether the Committee had a substantial conflict of interest in reaching its decision. If no conflict exists, the Court uses an "arbitrary and capricious" or "abuse of discretion" review; if there is a conflict, there is a heightened "arbitrary and capricious" standard to be used. *Torres*, 346 F.3d at 1328-29 (citing *Brown v. Blue Cross and Blue Shield of Alabama*, 898 F.2d 1556 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991) and *Firestone*). Plaintiff has argued for the heightened standard (Doc. 47, pp. 15-16); Defendants assert that there is no conflict and that the

higher standard is improper (Doc. 54, pp. 11-15).

Plaintiff argues for the heightened standard because the company "used its own management level, handpicked employees" (Doc. 47, pp. 15-16). Shirley is correct that the Pension Plan specifically states that the Retirement Board "shall consist of the members of the Kimberly-Clark Corporation Hourly Employees' Standard Retirement Plan Committee as designated by the Chief Executive Officer of Kimberly-Clark Corporation" (Doc. 45, Exhibit B, KCC00583 ¶ 7.1). However, the Plan goes on to state that the Retirement Board

> shall have the exclusive discretionary authority to determine eligibility for and the amount of benefits under the Plan, to make factual determinations, to construe the terms of the Plan, to resolve any ambiguity therein, and to determine any question which may arise in connection with its operation or administration. Its decisions or actions in respect thereof shall be conclusive and binding upon the Company.

(*Id.* at ¶ 7.7). The Court finds that Plaintiff has asserted only conclusory allegations of a conflict because Kimberly-Clark employees make up the Retirement Board; Shirley has not, however, "presented any probative evidence which suggests that the administrator's decision was influenced by any conflict of interest." *See Seales v. Amoco Corp.*, 82 F.Supp.2d 1312, 1318

10

(M.D. Ala), *aff'd*, 245 F.3d 795 (11th Cir. 2000).

Shirley further argues that depositing "funds into a trust is an artificial distinction" here because it remains under the control of the company and "the trustee serves at the pleasure of the company with the power to direct decisions" (Doc. 47, p. 16).  Furthermore, Plaintiff asserts that Defendants would have to replace the funds if it should become depleted and "[t]he company has the power to terminate the trust, along with the Plan" (*id.*).

The evidence shows that Kimberly-Clark Corporation contributes all required funds to the Plan (Doc. 45, Exhibit B, KCC00582 ¶ 6.1).  Assets of the Plan are held in trust to be used for the payment of benefits and expenses of the Plan (Doc. 45, Exhibit B, KCC00585 ¶ 8.1).  The Plan states that "no part of the corpus or income shall be used for, or diverted to, purposes other than for the exclusive benefit of Members or their beneficiaries under the Plan . . . prior to the satisfaction of all liabilities" (*id.*).

The Court notes that the *Buckley* Court upheld the use of trusts in ERISA plans when there has been a legal transfer of discretionary authority.  *Buckley*, 115 F.3d at 939.  The Court has already discussed the Plan's granting of full discretion of the awarding of benefits to the Retirement Board.

11

After reviewing the foregoing evidence, the Court finds
that Plaintiff has not shown that there is a conflict with the
way the Plan has been written.  In spite of assertions
otherwise, Shirley has not shown that the Corporation controls
either the Retirement Board or the Trustees; in fact, the Plan
shows that both the Board and the Trustees have been given
full discretion to perform their respective responsibilities.[7]
Additionally, the Court finds that Plaintiff has failed to
present any evidence which suggests that either the Board or
the Trustees are mere puppets acting out the whims of
Kimberly-Clark or any other entity.  The Court finds that the
arbitrary and capricious standard is the appropriate standard
of review in this action.

Now that the Court has determined the appropriate
standard for reviewing the decision which denied Shirley
disability benefits, the Court will look at the evidence
leading to that decision.  First, however, the Court notes

---

[7]The Court notes that Plaintiff has directed its attention to
*Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1135
(11th Cir. 2004), in which the Eleventh Circuit Court of Appeals held
that "in most cases where a company both administers and funds a
plan, a conflict of interest arises, thus triggering heightened
arbitrary and capricious review."  The Court finds, though, that this
is not one of those cases as it does not fit the *Buce* rule:  "if the
plan-payout funding source retains ultimate control over the pay-out
decision, the 'heightened' review standard applies."  *Williams*, 373
F.3d at 1136 (citing *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133,
1141 (11th Cir.), *cert. denied*, 534 U.S. 1065 (2001)).

that to be eligible for disability under this Plan, an
employee must have ten years of vested service and meet the
definition of disability which is defined as follows:

> **Total and Permanent Disability** shall
> mean a disability that totally disables the
> Member, either physically or mentally, to
> such an extent that he is rendered wholly
> or continuously unable to engage in any
> occupation or perform any work for any kind
> of compensation of financial value.  The
> disability must be certified by a licensed
> Doctor of Medicine to be such as can
> reasonably be expected to continue during
> the remainder of the Member's lifetime.

(Doc. 45, Exhibit B, KCC00555; Exhibit C, KCC00683).[8]  The
Court states at the outset that it will not summarize all
medical evidence of record, but will focus on that which helps
it determine if Shirley's claim was properly considered.

     As part of his application, Plaintiff submitted a
physician's statement from an orthopedic surgeon, Dr. Brendt
P. Petersen, III, dated October 8, 2001 which indicated that

_____

     [8]The Court is familiar with *Helms v. Monsanto Co., Inc.*, 728
F.2d 1416, 1419 (11th Cir. 1984) and rejects Plaintiff's argument
that the Retirement Committee has adopted the view that this
definition of permanent and total disability means a finding of no
conscious human life (*see* Doc. 47, pp. 17-18).  Rather, the Court
understands the definition to be consistent with the holding in *Helms*
that "required [Plaintiff] to show physical inability to follow any
occupation from which he could earn a reasonably substantial income
rising to the dignity of an income or livelihood, even though the
income is not as much as he earned before the disability." *Helms*,
728 F.2d at 1421-22.

Shirley was capable of standing or walking one-to-four hours daily, sitting one-to-three hours daily, and driving one-to-three hours daily (Doc. 42, Exhibit 6, KCC00509; *see generally id.* at KCC00507-542).  Petersen further indicated that Shirley was not restricted in his use of hands for pushing/pulling, grasping, or fine manipulation or his feet for the use of foot controls; the doctor suggested that Plaintiff could bend, kneel, twist, and reach on an occasional basis and was not restricted from climbing at all (*id.* at KCC00509a).  Peterson restricted Shirley to lifting ten pounds frequently and twenty pounds occasionally (*id.*).  The doctor expressed the opinion that Plaintiff was incapable of performing sedentary work (*id.*); he went on to state, however, that although the restrictions were permanent, Shirley would benefit from job rehabilitation and could work within those restrictions (*id.* at KCC00510).

Based on this evaluation and the medical evidence presented, the Retirement Committee determined that Plaintiff had not satisfied the definition of total and permanent disability as it did not state that he was capable of performing any work (*id.* at KCC00499-501).  The Court finds that this decision was not arbitrary or capricious as Dr. Petersen, Plaintiff's own doctor, specifically found Shirley

14

capable of performing physical tasks which were consistent
with performing other work.  While this evidence shows that
Plaintiff may be unable to return to his own work, it does not
demonstrate an inability to perform any work.

Shirley appealed the denial of his application and
submitted additional medical information (Doc. 42, Exhibit 5,
KCC00452-497).  Included within that evidence was another
report from Dr. Petersen which was largely incomplete (*id.* at
KC00454-466).  The doctor noted that Plaintiff had cervical
spinal stenosis C3-5, that he was not a candidate for
rehabilitation, and that job modifications would not enable
him to work with his impairments (*id.* at KCC00455-456).  There
were no personal medical notes attached.

Dr. Petersen did attach, however, a functional capacity
evaluation which had been completed on February 6, 2002 (*id.*
at KCC00483-497).  In spite of the exercise physiologist's
repeated assertions that Plaintiff had put forth less than
maximum effort,[9] it was determined that Shirley could perform
a full range of light work and a reduced range of medium work

_____

[9]It was determined that Plaintiff had shown less than maximum
effort on four of six specific tests designed to test for
inconsistencies; additionally, Shirley tested positive on four of
five categories on a symptom magnification test (Doc. 42, Exhibit 5,
KCC00495).  Plaintiff also scored 30 on a McGill Pain Questionnaire
which indicated symptom magnification characteristics (*id.*).

(*id.* at KCC00483).  Notably, Plaintiff was totally unrestricted in feet function, balancing, repetitive squatting, turning/twisting at the thoracic/lumbar levels, reaching out, and fine manipulation on the left; additionally, Shirley was capable of frequent tolerance for standing, ladder climbing, stooping/bending, kneeling, crawling, reaching side-to-side and down, fine manipulation on the right, and simple grasping on both the right and the left (*id.* at KCC00485).

The Retirement Committee reviewed the evidence and denied the appeal (*id.* at KCC00442-443).  The Court finds that this decision was not arbitrary and capricious in light of the evidence.  Specifically, although Shirley's treating physician more recently indicated that Plaintiff could not be rehabilitated or work at all, he provided no supporting documentation for that view; the record only shows that he changed his mind.  The functional capacity evaluation, without equivocation, finds Shirley able to perform a full range of light work.  This renders Plaintiff's assertion that he is unable to perform any sort of work untenable.

Plaintiff then requested a special review of his disability application and submitted more than three hundred pages of medical evidence (Doc. 42, Exhibits 1-4, KC00107-440).  Among that evidence was another statement from his

doctor, Dr. Petersen, dated September 3, 2002, which stated that Shirley's limitations were permanent and that he would not benefit from rehabilitation (Doc. 42, Exhibit 1, KCC00110); the Court notes, though, that the doctor failed to state what those limitations were as the balance of the form is almost completely blank (*id.* at KCC00108-121).

Plaintiff also submitted a decision by the Social Security Administration which awarded him disability benefits in a decision dated February 19, 2002 (*id.* at KCC00122-128). In that decision, the Administrative Law Judge (hereinafter *ALJ*) found that Shirley retained "the physical functional capacity to perform work that does not require lifting or carrying of more than 10 pounds or prolonged standing waking [sic] or sustaining concentration, persistence or pace for an 8 hour work day" (*id.* at KCC00127 ¶ 5).  The ALJ further found that Plaintiff's "residual functional capacity for the full range of sedentary work is reduced by his inability to sustain concentration, persistence or pace on a job" (*id.* at ¶ 7).  On that basis, and after consideration of Shirley's vocational factors, disability benefits were awarded (*id.* at ¶¶ 8-11).

On January 20, 2003, the Retirement Committee, after reviewing all of the submitted evidence, denied Shirley's special appeal (Doc. 42, Exhibit 1 KCC00097-99).  In reaching

17

that decision, the Retirement Committee specifically relied on the functional capacity evaluation and the lack of objective medical evidence demonstrating disability (*id.* at KCC00099). It also pointed out that the social security determination was not dispositive as the standards are different (*id.* at KCC00098); the denial letter also pointed out that although Dr. Petersen had stated that Shirley was disabled, he had provided no evidence supporting that opinion.

The Court has reviewed all of the medical evidence, though it has not seen fit to summarize it all herein, and finds that the Retirement Committee has not acted in an arbitrary and capricious manner.  The Court finds that the evidence cited supports its decision.

Specifically, the Court has seen nothing which refutes the conclusions of the functional capacity evaluation (*see* Doc. 42, Exhibit 5, KCC00483-497).  This evaluation is the newest, most objective evidence[10] available; to ignore it would amount to cherry-picking[11] the evidence.  Furthermore,

---

[10]Plaintiff has claimed that the Retirement Committee changed the standard in that they required objective evidence of his disability (Doc. 47, pp. 18-19).  The Court suggests that a finding of disability which did not require objective evidence would require no more than a claimant's statement of an inability to perform any work.

[11]The Court specifically finds that Plaintiff's argument that the Retirement Committee engaged in "cherry-picking" the evidence to

though Dr. Petersen expressed the opinion that Shirley was disabled, he provided no evidence to support that opinion; most telling is the fact that he changed his opinion without providing any new evidence to support that change (*cf.* Doc. 42, Exhibit 6, KCC00507-542; Exhibit 5, KCC00452-497).

With regard to the social security disability finding, the Court notes that "[a] district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits." *Kirwan v. Marriott Corp.*, 10 F.3d 784, 790 n.32 (11th Cir. 1994). This Court has reviewed that decision and finds it instructive in that it does not find Shirley disabled because there are no jobs which he can perform; rather, it is a finding that his physical ability to perform a full range of sedentary work is reduced in both the number and types of jobs he can perform because of the mental impairments he suffered. Though the Social Security Administration does not state, at this point, how many or what jobs are available, its decision indicates that there are jobs available; however, because of vocational factors, Shirley is found to be disabled.  This

_____

be without substance (Doc. 47, pp. 23-26).  Shirley's failure to understand the definition of *total and permanent disability* does not mean that the Committee's understanding of it amounted to a selective viewing of the evidence.

finding is not the same as a finding of total and permanent disability under the Pension Plan.

After review of the pleadings and the evidence of record, the Court finds that the decision of the Retirement Committee that Plaintiff did not meet the definition of total and permanent disability under the Pension Plan was not an arbitrary and capricious one. With this determination, the Court finds it appropriate to grant the Motion for Summary Judgment brought by the Defendants and deny the Motion for Summary Judgment brought by Plaintiff as to Shirley's claim that he was improperly denied total and permanent disability benefits by KC Pension.

The next issue for this Court's consideration is whether KC Medical improperly terminated Shirley's COBRA coverage. The evidence shows that following his termination, Shirley received health care coverage under the Consolidated Omnibus Budget Reconciliation Act (*COBRA*) (Doc. 45, Exhibit G [O'Brien Depo.], LS00521). Plaintiff received notice of that coverage which stated that "COBRA coverage will end automatically if . . . [p]remiums are not paid within 30 days of the due date" (Doc. 45, Exhibit D [Shirley Depo.], pp. 184-85 and Ex. 18 at LS00523 [*see generally* LS00521-523). Shirley testified that he received a Billing Notice every month (*id.* at pp. 181-82).

Sally O'Brien[12] testified that a document entitled "Important Information About Your Billing Process" was enclosed with the COBRA statement every month which stated as follows:   **"IF YOU DO NOT PAY YOUR BILL <u>IN FULL</u> WITHIN 30 DAYS AFTER THE DUE DATE YOU WILL LOSE ALL YOUR BENEFIT COVERAGES, INCLUDING MEDICAL RETROACTIVELY TO THE LAST FULL MONTH PAID**" (Doc. 45, Exhibit G [O'Brien Depo.], p. 69 and Ex. 4) (emphasis in original).[13]   A billing notice was sent to Plaintiff, which he acknowledges receiving, on December 10, 2002 which stated as follows: "Payment is due upon receipt of this notice.   Your previous balance was not received by the statement date.   To receive coverage after 11-30-2002, your payment of $403.08 must be received by 12-30-2002" (Doc. 45, Exhibit D [Shirley Depo.], pp. 188-89 and Ex. 19 at KCC00091).

Shirley sent a check dated January 2, 2003 to the Kimberly Clark Benefits Center to cover his December payment

---

[12]Defendants have stated that O'Brien is "Kimberly-Clark's Director of Health and Welfare Plans" (Doc. 45, p. 26 n.7).   Though there is no supporting documents providing evidence of O'Brien's position in the company, Plaintiff acknowledges O'Brien's position of authority (*see* Doc. 47, p. 27 ("O'Brien, the director of the KCC Medical Plan or Health and Welfare Plan")).

[13]The Court notes that although Defendants have given these cite pages as support for their assertion (Doc. 45, ¶ 90), no connection has been shown that the document to which she is referring on page sixty-nine of her deposition is exhibit four attached to her deposition though there is a reference to attachment 1.   Plaintiff has posed no apparent objection.

as well as the past due balance; Plaintiff stated that although he was not sure exactly when he sent the check, it was before the end of December (Doc. 45, Exhibit D, pp. 190-93 and Ex. 20 at LS00720). A form letter, dated January 20, 2003 was sent to Shirley, informing him that his payment had not been processed and was being returned to him (Doc. 45, Exhibit D, Ex. 20 at LS00721).

Plaintiff appealed the denial of his coverage (Doc. 45, Exhibit D, Ex. 19 at KCC00089-91).  A letter was sent to Plaintiff from Sally O'Brien which stated that his "payment was postmarked January 2, 2003" which was late; because of that, the payment would be refunded as his COBRA coverage had been cancelled, effective November 30, 2002 (Doc. 45, Exhibit G [O'Brien Depo.], Ex. 1 at KCC00085).  The letter also stated that his appeal for reinstatement of COBRA coverage was denied pursuant to the laws of ERISA (*id.; cf.* Doc. 45, Exhibit G, Ex. 4).

According to paperwork setting out information regarding to Defendants' COBRA plan, "[t]imely payment is determined based on the postmark date on the mailing envelope of the premium payment" (Doc. 45, Exhibit J, KCC00760).  This envelope has not been produced as evidence.

Though Shirley's check is dated after the day the payment

was due and Sallie O'Brien states that the envelope was postmarked January 2, 2003, Plaintiff has stated that he mailed it before the end of the month. This presents a material factual dispute. As this Court is not allowed, at this juncture in the proceedings, to make credibility determinations, the Court cannot make a factual determination as to whether Shirley's payment was timely or not. With this determination, the Court must deny both Plaintiff's and Defendants' Motion for Summary Judgment as to the COBRA claim brought in this action.

In summary, the Court determined that the Motion for Summary Judgment filed by the Defendants (Docs. 43, 44, 45, 48) should be **GRANTED** as to Plaintiff's claim that he was improperly denied total and permanent disability benefits, but **DENIED** as to Plaintiff's claim that he was improperly denied COBRA benefits. The Court has further determined that Plaintiff's Motion for Summary Judgment (Docs. 46, 47, 49, 50, 51, 52) should be **DENIED** in its entirety.

DONE this 15th day of April, 2005.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE